UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

LISA DiROCCO                         :
                                    :
        v.                          :        C.A. No. 09-094S
                                    :
MICHAEL J. ASTRUE                    :
Commissioner of the Social Security  :
Administration                       :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

        This matter is before the Court for judicial review of a final decision of the Commissioner

of the Social Security Administration ("Commissioner") denying Supplemental Security Income

("SSI") benefits and Disability Insurance Benefits ("DIB") under the Social Security Act (the

"Act"), 42 U.S.C. § 405(g).  Plaintiff filed her Complaint on March 4, 2009 seeking to reverse the

decision of the Commissioner.  On September 11, 2009, Plaintiff filed a Motion to Reverse Without,

or Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision.  (Document

No. 8).  On December 22, 2009, the Commissioner filed a Motion for an Order Affirming the

Decision of the Commissioner.  (Document No. 13).

        This matter has been referred to me for preliminary review, findings and recommended

disposition.  28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Based upon my review of the record, the legal

memoranda filed by the parties and independent legal research, I find that there is not substantial

evidence in this record to support the Commissioner's decision and findings that Plaintiff is not

disabled within the meaning of the Act.  Consequently, I recommend that the Commissioner's

Motion for an Order Affirming the Decision of the Commissioner (Document No. 13) be DENIED and that Plaintiff's Motion to Reverse Without, or Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision (Document No. 8) be GRANTED.

## I.     PROCEDURAL HISTORY

Plaintiff filed applications for SSI and DIB on October 8, 2004, alleging disability since October 1, 2002. (Tr. 47-57). Plaintiff's insured status expired on December 31, 2007. (Tr. 65). The applications were denied initially (Tr. 39-40) and on reconsideration. (Tr. 43-45). Plaintiff requested an administrative hearing. (Tr. 46). On June 15, 2007, Administrative Law Judge Martha H. Bower ("ALJ") held a hearing at which Plaintiff, represented by counsel, a medical expert ("ME") and a vocational expert ("VE") appeared and testified. (Tr. 458-507). A supplemental hearing was held on February 26, 2008. (Tr. 434-457). The ALJ issued a decision unfavorable to Plaintiff on February 29, 2008. (Tr. 17-30). The Appeals Council denied Plaintiff's request for review on January 19, 2006. (Tr. 6-9). A timely appeal was then filed with this Court.

## II.    THE PARTIES' POSITIONS

Plaintiff argues that the ALJ misquoted and misinterpreted a substantive conclusion contained in Dr. Colpak's report (Ex. 30F), a treating Psychologist, which infected her ultimate finding of no disability. She also contends that the ALJ did not properly evaluate the opinions of Dr. Frieder (an examining physician) and Drs. Akelman and Marcaccio (treating physicians).

The Commissioner disputes Plaintiff's claims and argues that the ALJ's conceded error in quoting Dr. Colpak was harmless and that her decision was otherwise supported by substantial evidence. He also disputes any error in the ALJ's evaluation of medical opinion evidence.

### III.   THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. <u>Seavey</u>, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. <u>Id.</u>; <u>accord</u> <u>Brenem v. Harris</u>, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. <u>Freeman v. Barnhart</u>, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. <u>Diorio v. Heckler</u>, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. <u>Freeman</u>, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause

for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11ᵗʰ Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  Id.  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

## IV.    THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported

by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B.      Developing the Record**

The ALJ has a duty to fully and fairly develop the record.   Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

**C.      Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

**D.      The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not

disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).  Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act.  Seavey, 276 F.3d at 5.  The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits.  Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c).  If a claimant

becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.  Id.

E.      **Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  Seavey, 276 F.3d at 5.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").  Seavey, 276 F.3d at 5.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.  Nguyen, 172 F.3d at 36.  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  Heggarty, 947 F.2d at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-

exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.     Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1)     The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2)     Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3)     Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4)     Treatment, other than medication, for relief of pain;
>
> (5)     Functional restrictions; and
>
> (6)     The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### 2.    Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.    APPLICATION AND ANALYSIS

Plaintiff was forty-three years old on the date of the ALJ's decision.  (Tr. 29-30).  Plaintiff has a high school education with past relevant work as a clerk and data processing supervisor/clerk in a bank.  (Tr. 28, 107).

In 2002, Plaintiff underwent an arthroplasty and subsequent pin removal on her left thumb to alleviate pain there and was released to work on July 8, 2002.  (Tr. 131-133, 292).  In June 2003, Plaintiff complained to Dr. Edward Akelman, her hand surgeon, of thumb/arm pain, particularly her

right thumb, and that the pain radiated into her upper arm.  (Tr. 414).  In November 2003, Dr. Gary A. L'Europa, a Neurologist, diagnosed Plaintiff with bilateral carpal tunnel syndrome.  (Tr. 149).

In October 2004, an electrodiagnostic examination performed at the request of Dr. Akelman, revealed findings of "borderline significance for a diagnosis of carpal tunnel syndrome."  (Tr. 279). Carpal tunnel release surgery was performed by Dr. Akelman in November 2004 and an excision of superficial skin neuroma and removal of deep suture was performed in December 2004.  (Tr. 424, 425).  Following these procedures, Plaintiff was released to "full activity."  (Tr. 124).

In January 2005, Dr. Stuart Schwartz, a Rheumatologist, examined Plaintiff and concluded that she possessed lateral epicondylitis and left bicipital tendinitis with a history of osteoarthritis in her hands and knees.  (Tr. 226).  Dr. Schwartz recommended what he considered a "conservative approach" of Feldene and strengthening exercises for her forearms.  Id.

In February 2006, Dr. Akelman indicated that Plaintiff's carpal tunnel syndrome symptoms of pain and numbness were moderate.  (Tr. 272).  In February 2007, Plaintiff went to Dr. Akelman complaining of pain and discomfort in her hand, pain in her left elbow that radiated to her shoulder and numbness and tingling in her left wrist.  (Tr. 294).  He found the Tinel's and Phalen's tests for carpal tunnel syndrome to be positive in the left wrist and negative in the right wrist.  Id.  At that time Dr. Akelman concluded that Plaintiff is "totally disabled from normal work activities and has significant long term disability.  I do not believe this will change with time."  Id.

In August 2004, Plaintiff presented to Dr. Vincent Marcaccio, her primary care physician, with complaints including sciatica and anxiety/depression.  (Tr. 189).  In that same month, a CT scan of her brain, conducted after she complained of lower extremity numbness, revealed normal findings.  (Tr. 205).

In April 2005, Plaintiff presented to Dr. Keith Rafal of the Fibromyalgia Program at Healing Choices, P.C., describing pain in all her joints and lower back.  (Tr. 215).  She reported at that visit that her pain was an eight out of ten which was unusual, as it usually was six or seven.  (Tr. 216). She reported sleeping well, about six or seven hours per night, although she felt achy in the morning. Id.  Upon physical examination, Plaintiff demonstrated mild to moderate tenderness, meeting the criteria for fibromyalgia "marginally."  (Tr. 217).  Plaintiff had good upper body strength, good hand grasp, good pincer grasp, functional range of motion in her upper extremities, functional range of motion in her cervical range, negative straight-leg testing bilaterally, functional range of motion in her hips, knees and ankles and her gait was normal.  Id.  Dr. Rafal referred Plaintiff to physical therapy and occupational therapy for treatment.  Id.  He also provided her with a Lidoderm patch and suggested acupuncture.  (Tr. 218).  At the time, Plaintiff was still taking Vicodin for pain.  (Tr. 215).

During 2005, Plaintiff presented to Dr. Marcaccio with complaints of fibromyalgia, and he noted that she intended to follow up with Dr. Rafal on this issue.  (Tr. 177, 182, 183, 185, 302).  In February 2006, Dr. Marcaccio speculated whether Plaintiff was experiencing addiction and elected to get a second opinion from a pain clinic on her fibromyalgia and tendinitis.  (Tr. 304).

In the same month, Dr. Akelman concluded that Plaintiff was able to sit and stand for only two hours out of an eight-hour workday, walk for one hour, lift and carry up to ten pounds occasionally, was unable to use her left and right extremities for reaching, pushing, pulling and fine manipulation, and could only occasionally bend, squat, kneel and crawl.  (Tr. 270).  Dr. Akelman further concluded that Plaintiff possessed moderate pain due to fibromyalgia, and that Plaintiff's

pain would prevent sustained concentration and productivity for full-time employment on an ongoing, sustained basis.  (Tr. 271).

One month later, in March 2006, Dr. Marcaccio concluded that Plaintiff had opiod dependence and elected to place her on Suboxone which he believed would provide adequate pain relief.  (Tr. 305).  From August 2006 through February 2007, Plaintiff continued to be treated for her opiod dependence and repeatedly reported to Dr. Marcaccio that she was doing well and even great, without withdrawal symptoms.  (Tr. 306, 307, 310, 311, 315, 319).  During this time, she repeatedly presented with a normal gait. (Tr. 307, 319).  In November, Plaintiff reported withdrawal symptoms, although treating physician Dr. Shawn Fazel opined that she was not experiencing withdrawal symptoms, and she maintained a normal gait.  (Tr. 308).

In March 2007, still on Suboxone, Plaintiff presented to treating physician Dr. Peter Pizzarello complaining of fibromyalgia, carpal tunnel syndrome, pain in her knees, right pelvis pain, neck pain and back pain, although he reported she was not taking any medication at the time of the visit. (Tr. 295, 321).  She complained that while her symptoms had been "on and off" for years, they had appeared to be getting worse.  (Tr. 295).  Upon physical examination, however, Plaintiff exhibited full range of motion, flexion and rotation in the cervical spine, full range of motion in the low back without midline or paraspinal tenderness, motor strength at five out of five in all major muscle groups and normal straight-leg raising on both sides, although she exhibited bicipital tenosynovitis and limitations of motion in her shoulders and pain in her right iliac crest, mild chondromalacia patella and medical joint space tenderness in her knee.  (Tr. 296).  Dr. Pizarello prescribed Celebrex for pain and gave her exercises she could perform to help with the pain in her back and knee.  (Tr. 23, 296).

-14-

In May 2007, Plaintiff reported that she was having more muscle pain, her legs hurt, and her muscles in one shoulder, hips, and back were tender with palpation. (Tr. 323). Her gait remained normal, and Dr. Fazel indicated she could use Flexeril. Id. In that month, Dr. Marcaccio completed a medical questionnaire in which he indicated that Plaintiff experienced moderate symptoms of generalized myalgias and fatigue as a result of her fibromyalgia. (Tr. 328). He concluded that she was not able to sustain competitive employment on a full-time, ongoing basis. (Tr. 329).

The following month, Plaintiff presented to Dr. Marcaccio with some tender trigger points in her upper and lower extremities and in her upper back. (Tr. 352). In July 2007, Plaintiff reported to Dr. Fazel mild edema in her lower extremity. (Tr. 344). In September 2007, Plaintiff presented to treating physician Dr. David Colpak and reported she slept only two to three hours per night. (Tr. 343).

In October 2007, Plaintiff reported feeling "great" to Dr. Fazel and that she slept better. (Tr. 348, 359). She also lacked edema and had a normal gait. (Tr. 348). In November 2007, Plaintiff reported pain in her right upper/mid back, and Dr. Fazel recommended topical treatment, i.e., Bengay. (Tr. 349). Two weeks later, Plaintiff reported pain in her right back but stated she had not used the topical treatment suggested. (Tr. 351).

In 2008, Plaintiff reported that she was tolerating the pain of her fibromyalgia "ok" and attended physical therapy twice, but stopped due to what she considered scoliosis. (Tr. 360, 382). She complained of pain her arms, shoulders and back and indicated that her body aches in the morning. (Tr. 378, 379, 381). Dr. Marcaccio referred her to Dr. Jacob Berger, a Neurologist, who noted that Plaintiff was able to transfer and arise from a seated position with arms crossed without difficulty and was able to perform standard heel, toe and tandem gaits well. (Tr. 403). He indicated

that she possessed myalgias, most likely fibromyalgia, and comorbid bipolar disorder, and recommended that a new EMG be performed to exclude myopathy as her symptoms had worsened. (Tr. 404).

In November 2008, Dr. Akelman reiterated his February 2006 conclusion that Plaintiff's pain was moderate but that she could not sustain competitive employment on a full-time, ongoing basis. (Tr. 428).

In April 2005, a state agency non-examining physician Dr. John Bernardo, reviewed the record and opined that Plaintiff was capable of light work with limited pushing or pulling capabilities in her upper extremities and limited ability in fingering or feeling. (Tr. 281, 283). He also determined that she should avoid concentrated exposure to extreme heat or cold. (Tr. 284). In December 2005, a state agency, non-examining physician, Dr. Alberto Tonelli, also reviewed the record and opined that Plaintiff was able to perform light work, with limited ability for pushing and pulling in the upper extremities and limitations so that she would only be able to climb, balance, stoop, kneel, crouch or crawl occasionally. (Tr. 238-239). He also found she should avoid concentrated exposure to extreme heat or cold. (Tr. 241). In support of these conclusions, Dr. Tonelli indicated that Plaintiff had indicated no worsening in her symptoms, and observed that Dr. Rafal had found she possessed mild to moderate tender points and that her examination was otherwise unremarkable. (Tr. 239).

A.      The ALJ's Decision

The ALJ decided this case adverse to Plaintiff at Step 5. The ALJ found that Plaintiff's chronic pain syndrome, status post bilateral carpal tunnel release, and depression, were "severe" impairments as defined in 20 C.F.R. § 404.1520(c). (Tr. 22). As to RFC, the ALJ found that

-16-

Plaintiff was limited to a limited range of light work.  (Tr. 26).  Finally, based on testimony from a VE, the ALJ determined that Plaintiff's RFC would allow her to perform several unskilled light or sedentary jobs which exist in significant numbers.  (Tr. 29-30).  Thus, the ALJ concluded that Plaintiff did not meet the definition of disability under the Social Security Act.

### B.    The ALJ's Misinterpretation of a Portion of the Treating Psychologist's Opinion Warrants Remand

There is limited evidence in the record regarding Plaintiff's mental health impairments.  On January 6, 2006, Dr. Mary Ann Paxson, a non-examining state agency Psychologist, found insufficient evidence of a mental impairment noting that Plaintiff had no mental health treating source and that her primary care physician's records were insufficient to establish a psychiatric impairment.  (Tr. 245-246, 249).  On February 15, 2006, Plaintiff was seen by Dr. Lucille Frieder, a consulting Psychologist, who performed cognitive and emotional screening.  (Ex. 12F).  Dr. Frieder administered a number of tests and concluded that Plaintiff was "severely depressed" and assessed a GAF score of 48 or serious symptoms.  (Tr. 264-267).  Dr. Frieder opined that Plaintiff's mental RFC was moderately severely to severely impaired in several respects.  (Tr. 268-269).

In 2007, Dr. Marcaccio, Plaintiff's primary care physician, referred Plaintiff to a Psychologist, Dr. Colpak, for mental health treatment.  (Tr. 343, 362).  On February 25, 2008, Dr. Colpak issued a "treatment update" in which he concludes that Plaintiff exhibited "many indications of serious depression" and "the likelihood that the bulk of her severe life dysfunction stems from a manic form of bipolar disorder."  (Tr. 363).  He indicated that he had "rarely observed a patient with such severe pressured speech and extreme racing thoughts," and opined that her "symptoms are far from fully controlled."  (Tr. 362).

-17-

The ALJ chose not to give great weight to Dr. Colpak's opinion of disability. (Tr. 28). The ALJ observed that while Dr. Colpak opined that Plaintiff was disabled, he also indicated that her "overall emotional life was fair and <u>could be adequately</u> modulated." <u>Id.</u> (emphasis added). However, the ALJ misquoted Dr. Colpak. Dr. Colpak actually said that "access to overall emotional life is also fair and <u>can be inadequately</u> modulated." (Tr. 364). (emphasis added). Although Dr. Colpak does not elaborate on this statement, it can reasonably be interpreted as an observation that Plaintiff can be emotionally unbalanced. The ALJ misquoted the statement and misinterpreted it as observing that Plaintiff's emotional issues could be adequately balanced and controlled. The ALJ then mistakenly concluded that Dr. Colpak's report was internally inconsistent and should be discounted for that reason.

The Commissioner concedes that the ALJ misquoted Dr. Colpak but argues that the error is harmless on this record. (Document No. 13 at 14-16). I disagree. Dr. Colpak is a treating physician. Because a treating physician is typically able to provide a detailed longitudinal picture of a patient's impairments, an opinion from a treating source is generally entitled to considerable weight if it is well supported by clinical findings and not inconsistent with other substantial evidence of record. 20 C.F.R. § 404.1527(d); <u>see also</u> <u>Castro v. Barnhart</u>, 198 F. Supp. 2d 47, 54 (D. Mass. 2002) (The ALJ "may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors."). The amount of weight to which a treating source opinion is entitled depends in part on the length of the treating relationship and the frequency of the examinations. 20 C.F.R. § 404.1527(d)(1). If a treating source's opinion is not given controlling weight, the opinion must be

evaluated using the enumerated factors and "good reasons" provided by the ALJ for the level of weight given.  20 C.F.R. § 404.1527(d)(2).

In evaluating Dr. Colpak's opinion, the ALJ erroneously recounted that "Dr. Colpak reported that it was hard to imagine the [Plaintiff] being able to sustain any sort of consistent productive activity in her current state, while at the same time noting the [Plaintiff's] overall emotional life was fair and could be adequately modulated." (Tr. 28).  In the next sentence, the ALJ indicated that she did not give great weight to the aforementioned assessments (including Dr. Colpak's) as to Plaintiff's inability to work as they are not supported by, or consistent with the evidence as a whole and their treatment records.  Id.  Thus, it is apparent that the ALJ gave reduced weight to Dr. Colpak's opinion because she concluded that it was internally inconsistent.  While such a contradiction may constitute a "good reason" under the treating physician rule (20 C.F.R. § 404.1527(d)(2)), it cannot when the premise is plainly based on a misquotation of the record.

The Commissioner argues that the ALJ's mistake is "minor and harmless" when viewed in the context of this record.  While I agree that it makes no sense to remand a case based on a nondispositive or harmless error, this is not such a case.  Because the record contains only limited mental health treatment records, Dr. Colpak's report is a prominent piece of evidence and a mistake in interpreting it becomes magnified.  In order to find the ALJ's mistake to be harmless error, I would have to speculate as to what weight the ALJ would have given to the report if she had accurately quoted and interpreted it, and also to speculate as to what, if any, impact the ALJ's error had on her assessment of the opinions of Dr. Sullivan or Dr. Frieder.  In fact, the ALJ expressly based her assessment of such opinions, in part, on her conclusion that they were "not supported by

-19-

or consistent with the evidence as a whole." (Tr. 28). The "evidence as a whole" would obviously include Dr. Colpak's opinion which was misconstrued by the ALJ.

A harmless error finding is also not warranted due to the apparent closeness of the call in this case. The ALJ determined that Plaintiff's depression supported a moderate limitation in concentration, persistence and pace. (Tr. 26). However, according to the VE, if that limitation was moderately severe, then it would preclude all jobs, and Plaintiff would have prevailed. (Tr. 452, 455, 504). Furthermore, the ME, Dr. Kaplan, reviewed the medical records including Dr. Colpak's report and observed that "the major thing here is the psychiatric situation" and that "the evidence reflects somebody who has primarily a psychiatric problem." (Tr. 441-442).

I do not discount the difficulty of the ALJ's job given the high number and complexity of the cases presented to her. The single sentence misread by the ALJ in this case is awkwardly worded and is part of a record exceeding 500 pages. The mistake was clearly isolated and understandable in context, and my remand recommendation should not be interpreted to suggest otherwise. I have reviewed a significant number of this ALJ's decisions over the years and cannot recall a similar misquotation in the past. Although a remand may ultimately result in the same outcome, it should be the ALJ who evaluates and weighs the competing medical evidence in the first instance and not this Court. Given the particular state of this record, a finding of harmless error would inappropriately require the Court to step into the ALJ's shoes. On remand, the ALJ shall reassess the entirety of the medical evidence, including Dr. Colpak's report, and the ALJ may supplement the record at her discretion. In view of this remand recommendation, it is unnecessary to address Plaintiff's other claimed errors in the evaluation of the medical evidence.

## VI.     CONCLUSION

For the reasons stated above, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 13) be DENIED and that Plaintiff's Motion to  Reverse Without, or Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision (Document No. 8) be GRANTED.  I further recommend that the District Court enter Final Judgment in favor of Plaintiff remanding this matter for further administrative proceedings consistent with this report.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
January 14, 2010